BLANCHARD, J.
¶1 This appeal follows a jury trial involving two, related legal malpractice actions. In one action, James Bourne and Madison Homes, Inc. (Bourne) sued Philip Bradbury and Melli Law, S.C. (Bradbury), alleging that Bradbury negligently represented Bourne in connection with Bourne's taking a buy-out of his membership in a company. In the other action, Bourne sued the law firm Hinshaw & Culbertson, alleging that Hinshaw missed the statute of limitations deadline in commencing Bourne's malpractice action against Bradbury. The circuit court consolidated the two malpractice actions for purposes of a jury trial to resolve one issue common to both: whether Hinshaw failed to serve Bradbury with the summons and complaint in Bourne's action against Bradbury before the statute of limitations barred the action. The jury found that Hinshaw met the statute of limitations deadline. As a result of this verdict, the court entered a non-final order stating that Bradbury could not use the statute of limitations as a defense in subsequent litigation between Bourne and Bradbury. We granted leave to appeal and Bradbury appeals.
¶2 Bradbury argues that the circuit court erred by deciding to consolidate the two malpractice actions for purposes of the statute of limitations trial and in using certain language for the special verdict form, which was based on a pattern instruction. Bradbury also argues that the court erroneously exercised its discretion in: denying his motions for mistrial and to withdraw from a stipulation to hold the statute of limitations trial, based on Bradbury's position that Bourne and Hinshaw both pursued an improper "trial strategy"; denying Bradbury's motions for mistrial or continuance, based on use of exhibits not identified as exhibits before trial; setting the order of proof at trial; and admitting statements that Bradbury contends are hearsay. Bradbury requests that we reverse and remand "for further proceedings regarding all issues," including a retrial on the statute of limitations issue.
¶3 We conclude that the circuit court properly consolidated the two actions, consistent with WIS. STAT. § 805.05 (2015-16), for the limited purpose of resolving the statute of limitations issue, and that the pattern special verdict form that the court gave accurately conveyed the pertinent law to the jury.[1] We further conclude that the court did not erroneously exercise its discretion in denying Bradbury's motion relating to "trial strategy" pursued by Bourne and Hinshaw, allowing into evidence exhibits not specifically identified before trial, setting the order of proof, and admitting the alleged hearsay statements. Accordingly, we affirm.
BACKGROUND
¶4 We briefly summarize pertinent facts alleged in the two legal malpractice actions before turning to additional events leading to this appeal.
First Malpractice Action: Bourne Against Attorney Bradbury
¶5 Bourne was one of four members of a company. Bourne learned that two other members intended to vote to remove him from the company, and that they purportedly had the votes to do this because the fourth member, Sweeney, supported Bourne's removal. Aiming to salvage what he could from what he understood to be a bad situation, Bourne retained Bradbury to negotiate a buy-out of Bourne's ownership interest. Bradbury helped negotiate a buy-out agreement, which Bourne executed on July 23, 2003. However, months later, Bradbury and Bourne were told that Sweeney would not have voted to force out Bourne. In other words, Bourne alleges that he eventually learned that he had not needed to negotiate a buy-out on terms that were disadvantageous to him, based on the false premise that he was about to be forced out by the other three members.
¶6 The above facts, with emphasis on the allegedly missing information about Sweeney's actual views in advance of the buy-out, formed the basis for Bourne's eventual claim that Bradbury was negligent in representing Bourne in connection with the buy-out.
Second Malpractice Action: Bourne Against The Hinshaw Firm
¶7 Bourne hired Hinshaw to sue Bradbury for legal malpractice based on the allegations summarized above. Hinshaw filed a complaint against Bradbury on July 22, 2009. This would have been within the applicable statute of limitations by one day, see WIS. STAT. § 893.52(1), except that Hinshaw failed to timely serve the summons and complaint on Bradbury. Hinshaw refiled Bourne's suit against Bradbury on December 17, 2009, and this time successfully served the summons and complaint on Bradbury.
¶8 Bradbury asserted against Bourne the affirmative defense that the statute of limitations barred the second filed action. The circuit court ruled for Bradbury, granting his summary judgment motion and dismissing Bourne's claim based on the statute of limitations defense.
¶9 The above facts formed the basis for Bourne's claim in the second malpractice action, alleging that Hinshaw was negligent in failing to timely file and serve the summons and complaint against Bradbury.
Further Events
¶10 Bourne appealed the circuit court's dismissal of the action against Bradbury. We reversed and remanded for further proceedings, based on our determination that genuine issues of material fact existed regarding the "discovery rule" and its application to the pertinent statute of limitations period.[2] See Bourne v. Melli Law, S.C. , No. 2014AP2861, unpublished slip op. ¶ 16 (WI App. Jan. 14, 2016) (insufficient evidence "compel[ed] the inference" that Bourne had an "objective belief" that his malpractice claim against Bradbury had accrued by December 17, 2003).
¶11 After remand, Bourne and Bradbury stipulated to bifurcate trial into a first trial, devoted to the statute of limitations issue, and a second trial, if needed, on the merits of Bourne's malpractice claim against Bradbury in connection with the buy-out.
¶12 After the circuit court accepted the stipulation between Bourne and Bradbury, Hinshaw moved to consolidate Bourne's two malpractice actions. This would allow Hinshaw to participate in the statute of limitations trial along with Bourne and Bradbury. Bradbury opposed Hinshaw's motion to consolidate. The court rejected Bradbury's opposition and ordered consolidation.
¶13 With the two actions consolidated for purposes of an initial statute of limitations trial, the second trial (the one after the statute of limitations trial) would now resolve one of two issues. If the jury at the first trial determined that the statute of limitations is not a bar, the second trial would resolve the merits of Bourne's claim against Bradbury. But if the jury found that the statute of limitations is a bar, then the second trial would resolve the merits of Bourne's claim against Hinshaw.
¶14 At the statute of limitations trial, Bourne and Hinshaw both argued that Hinshaw did not miss the statute of limitations in commencing Bourne's suit against Bradbury. Bradbury alone argued to the contrary.
¶15 The circuit court instructed the jury with pattern instruction WIS. JI-CIVIL 950, which informs the jury how to evaluate a claim that a plaintiff used reasonable diligence in discovering an injury before a statute of limitations allegedly lapsed, and incorporates a proposed special verdict form on this topic.
¶16 The jury found that Bourne did not know, nor should he have known, that he had a legal malpractice claim against Bradbury until after December 17, 2003, and therefore the statute of limitations did not lapse by the time the action against Bradbury was properly commenced. This favored Bourne with respect to his claim against Bradbury and absolved Hinshaw with respect to Bourne's claim against it. Accordingly, the court issued an order establishing that the statute of limitations defense was no longer available to Bradbury and dismissed Bourne's action against Hinshaw. Bradbury appeals the order extinguishing his statute of limitations defense.[3]
DISCUSSION
I. The Circuit Court Did Not Err In Granting The Motion To Consolidate
¶17 Bradbury argues that the circuit court erred when it consolidated Bourne's action against Bradbury with Bourne's action against Hinshaw for the limited purpose of conducting the statute of limitations trial. Bradbury's primary argument is that consolidation was improper under the consolidation statute, WIS. STAT. § 805.05, which incorporates the requirements of the permissive joinder statute, WIS. STAT. § 803.04. Bradbury also appears to make a secondary argument that, even assuming that the consolidation decision did not violate these statutes, consolidation unfairly prejudiced him. We reject both arguments.
¶18 We review de novo Bradbury's primary argument that the consolidated actions were not permissibly joinable as required by WIS. STAT. § 805.05(1)(a). See Kluth v. General Cas. Co. of Wisconsin , 178 Wis. 2d 808, 815, 505 N.W.2d 442 (Ct. App. 1993) (interpretation of permissive joinder statute presents question of law reviewed de novo without deference to circuit court).
¶19 We review under the erroneous exercise of discretion standard Bradbury's apparent argument that the court should not have ordered consolidation even if the actions were permissibly joinable. See Fire Ins. Exch. v.Basten , 202 Wis. 2d 74, 95, 549 N.W.2d 690 (1996). In exercising its discretion to decide whether to consolidate multiple actions, a circuit court must consider if prejudice will result to any party and if consolidation promotes judicial economy. See Braun v. Wisconsin Elec. Power Co. , 6 Wis. 2d 262, 265, 94 N.W.2d 593 (1959).
¶20 More generally, "we will uphold [the court's] decision" as properly exercised if the court "based its decision on the pertinent facts in the record, applied the correct legal standard, and reached a reasonable determination." Thoma v. Village of Slinger , 2018 WI 45, ¶ 11, 381 Wis. 2d 311, 912 N.W.2d 56. However, "[i]f a circuit court exercises its discretion upon an error of law, the circuit court has erroneously exercised its discretion." Estate of Rille v. Physicians Ins. Co. , 2007 WI 36, ¶ 39, 300 Wis. 2d 1, 728 N.W.2d 693. Appellate courts "generally look for reasons to sustain discretionary rulings." Welytok v. Ziolkowski , 2008 WI App 67, ¶ 24, 312 Wis. 2d 435, 752 N.W.2d 359.
¶21 Turning to the substantive law on Bradbury's primary argument, a circuit court cannot grant a consolidation motion unless the actions proposed for consolidation "might have been brought as a single action under" the permissive joinder statute, WIS. STAT. § 803.04(1). WIS. STAT. § 805.05(1)(a) ; see S.D.S. v. Rock County DSS , 152 Wis. 2d 345, 360, 448 N.W.2d 282 (1989). Three conditions are necessary before multiple defendants may be joined for trial in one action: (1) "any right to relief" "is asserted against [the defendants] jointly, severally, or in the alternative"; (2) this right to relief arises "out of the same transaction, occurrence, or series of transactions or occurrences"; and (3) "any question of law or fact common to all defendants will arise in the action." Section 803.04(1). Bradbury does not dispute that the second and third permissive joinder requirements are met. He argues that the any-right-to-relief requirement is not met, and therefore that the malpractice cases were not joinable, requiring reversal of the circuit court's consolidation decision.
¶22 The circuit court determined that consolidation was appropriate because both Bourne's suit against Bradbury and Bourne's suit against Hinshaw turn on the resolution of the statute of limitations issue. The court noted that if Bradbury is not liable to Bourne, then Bourne's suit against Bradbury was filed outside of the statute of limitations, and Hinshaw may be liable to Bourne for missing the statute of limitations. The court reasoned that the statute of limitations is therefore the basis for alternate claims for relief-a defense against Bourne's case against Bradbury and an element of Bourne's case against Hinshaw-with common issues of law and fact.
¶23 Bradbury's primary argument that the circuit court erroneously determined that permissive joinder was appropriate depends on a distinction that he purports to draw in this context between claims and affirmative defenses. He argues that the two malpractice actions here do not meet the any-right-to-relief requirement for permissive joinder because his statute of limitations defense is not itself "any right to relief" under WIS. STAT. § 803.04(1). This is so, he contends, because it is an affirmative defense and not a claim. Only claims , Bradbury contends, and not affirmative defenses , can serve as "any" joint, several, or alternative "right to relief" meriting permissive joinder under the first step of the three-step standard. Focusing on this claim-affirmative defense distinction, Bradbury argues that the any-right-to-relief requirement for joinder was not met here. See WIS. STAT. § 802.02(3) ; State v. Watkins , 2002 WI 101, ¶ 39, 255 Wis. 2d 265, 647 N.W.2d 244 (noting that Black's Law Dictionary defines "affirmative defense" as " 'a defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim even if all allegations in the complaint are true.' ") (emphasis omitted).
¶24 We assume without deciding that Bradbury is correct that an affirmative defense cannot be "any right to relief." However, that does not undermine the circuit court's consolidation decision under a plain language interpretation of WIS. STAT. §§ 803.04(1) and 805.05. The consolidation statute requires that any right to relief "asserted against" the defendants in the cases proposed for consolidation "might have been brought as a single action" under the permissive joinder statute, not that they were in fact brought as a single action. See §§ 803.04(1), 805.05(1) (emphasis added). Thus, the question is, "might" Bourne's alternative claims against Bradbury and Hinshaw "have been brought in a single action," and therefore are joinable under § 803.04(1) ? The answer is yes. Bourne could have brought a single action against Bradbury and Hinshaw, making alternative claims that either Bradbury was liable to Bourne for malpractice in connection with the buy-out, or that Hinshaw was liable to Bourne for missing the statute of limitations in initiating the suit against Bourne.[4]
¶25 Turning to Bradbury's apparent secondary argument about unfair prejudice to him arising from consolidation, this seems to be based on two contentions. The first is without merit and the second is undeveloped.
¶26 The first prejudice argument is that the combined advocacy of Bourne and Hinshaw created an unfair 2-on-1 advantage, because both argued to the jury that the statute of limitations period had not lapsed. However, it is commonplace, and clearly anticipated by the rules of civil procedure, that parties who share aligned interests on an issue at trial may sometimes outnumber opposing parties, whether the particular ratio is 2:1, 10:1, or 5:2. Bradbury fails to point to a concrete, unfair disadvantage that the circuit court should have understood that he would suffer from the fact that Bourne and Hinshaw pursued their shared interest at trial.
¶27 Bradbury's second prejudice argument is that consolidation "played havoc" with the correct burdens of proof, helping Bourne to in some manner improperly "shift" to Bradbury the burden that Bourne would have to prove certain facts regarding Bourne's claim against Hinshaw . Whatever Bradbury precisely intends to argue along these lines, the argument fails for at least the reason that Bradbury fails to explain how the jury must have been, or even could have been, confused about Bradbury's undisputed burden to show that the statute of limitations had run.
II. The Circuit Court Did Not Err in Deciding to Use the Applicable Pattern Instructions For The Special Verdict Form
¶28 The circuit court based the special verdict and accompanying instructions on the pattern instructions in WIS. JI-CIVIL 950 ("Reasonable Diligence In Discovery Of Injury (Statute Of Limitations)"). The court gave the following special verdict:
Did James C. Bourne know or should he, with the exercise of reasonable diligence, have known on or before December 17, 2003, that the conduct of Philip J. Bradbury or Melli Law, S.C., was a cause of damage to him?
The court instructed the jury as follows regarding the special verdict:
The special verdict asks whether James C. Bourne knew, or should he with the exercise of reasonable diligence have known, on or before December 17, 2003, that the conduct of Philip J. Bradbury or Melli Law S.C. was a cause of damage him.
To answer this question "yes," you must be satisfied that, prior to December 17, 2003, Mr. Bourne knew or with the exercise of reasonable diligence should have known the following:
First, that he suffered damages.
Second, that his damages were probably caused by the conduct of Philip J. Bradbury or Melli Law, S.C.
"Reasonable diligence" means the diligence the great majority of persons would use in the same or similar circumstances to discover the cause of the damages.
The pattern instruction gives various options for characterizing the following concepts: on the one hand, "damage," "suffered damages," and "damages"; or, on the other hand, "injury," "was injured," and "injuries." WIS. JI-CIVIL 950. As reflected in the summary above, the court chose the first set, using "damages."
¶29 Bradbury makes two arguments challenging the court's selection of certain language from WIS. JI-CIVIL 950. First, he argues that the pattern-based special verdict was defective because it did not direct the jury to conduct a two-part inquiry, and that this was inconsistent with the tort discovery rule. Second, we also understand him to argue that use of language from WIS. JI-CIVIL 950 was inappropriate because it referred to the cause of "damage" to Bourne, as opposed to referring to Bourne's "claim." We conclude that the special verdict that the court gave the jury was an accurate statement of the law and that it applies on the facts here.[5]
¶30 Bradbury's arguments regarding the court's use of certain language from the pertinent pattern instruction for the special verdict form implicates two standards of review. First, "[a] circuit court has wide discretion in determining the words and form of a special verdict," which "[w]e will not disturb ... unless the court has erroneously exercised its discretion." Gumz v. Northern States Power Co. , 2007 WI 135, ¶ 23, 305 Wis. 2d 263, 742 N.W.2d 271. "A court erroneously exercises its discretion if the special verdict questions fail to cover all issues of fact or are inconsistent with the law." Id. , ¶ 24. Second, the determination of whether "a special verdict reflects an accurate statement of the law applicable to the issues of fact in a given case presents a question of law." Id.
¶31 "In performing our review, we do not view the special verdict in a vacuum. Instead, we also look to the accompanying instructions given to the jury." Schwigel v. Kohlmann , 2002 WI App 121, ¶ 10, 254 Wis. 2d 830, 647 N.W.2d 362. We consider the substance of pattern jury instructions for their persuasive value, but we are not bound by the language in pattern instructions. Runjo v. St. Paul Fire & Marine Ins. Co. , 197 Wis. 2d 594, 604, 541 N.W.2d 173 (Ct. App. 1995).
¶32 Bradbury's two-part inquiry argument lacks substance. As quoted above, the instructions stated that, for the jury to answer "yes" to the single question posed in the special verdict, it had to find that "Bourne knew" or "should have known" two facts before the applicable date: (1) that he had "suffered damages," and (2) that his "damages were probably caused by" Bradbury's "conduct." This is consistent with the law of the discovery rule as we explained the rule in Bourne . See Bourne , No. 2014AP2861, ¶ 10 ("Under the discovery rule, a claim does not accrue until the plaintiff 'discovers, or with reasonable diligence should have discovered, "not only the fact of injury but also that the injury was probably caused by the defendant's conduct." ' ") (quoting Gumz , 305 Wis. 2d 263, ¶ 26 ). Thus, Bradbury's argument that the court should have asked the jury to make two separate findings (as opposed to the special verdict's single finding) ignores the accompanying instructions, which explained that answering the special verdict form depended on the two-part inquiry.
¶33 Turning to Bradbury's "cause of damage" argument, Bradbury argues that using "cause of damage" instead of "claim" exacerbated improper argument by Bourne and Hinshaw at trial based on evidence the jury heard that Bradbury denied that he had been negligent in representing Bourne. We are not persuaded that the court's use of the phrase "cause of damage" misstated a legal standard or could have misled the jury regarding the proper issues at trial or material facts. The jury was necessarily aware of the general nature of Bourne's malpractice claim against Bradbury, including Bourne's allegation that Bradbury had caused him damage through his conduct in representing Bourne. The court did not instruct the jury that Bradbury had in fact caused damage to Bourne and the instructions as a whole made clear that the jury was to resolve the discovery issue and no other issue. Further, Bradbury fails to support an argument that the court was required to craft a special verdict to "ameliorate" allegedly improper arguments by Bourne and Hinshaw. Accordingly, we affirm the court's decision to give a special verdict to the jury based on the applicable pattern instructions, as refined by the circuit court, because Bradbury fails to show an error of law or an erroneous exercise of discretion.
III. The Circuit Court Did Not Erroneously Exercise Its Discretion In Denying Bradbury's Motion For A Mistrial
¶34 Bradbury contends that the circuit court erroneously exercised its discretion in denying Bradbury's motion for a mistrial based on what Bradbury characterizes as Bourne and Hinshaw's improper "trial strategy."[6] We affirm the court's denial of Bradbury's mistrial motion because we conclude that the court's reasoning was rational, reasonable, and sufficiently supported by the record.
¶35 Bradbury's arguments on this topic are imprecise and not easily summarized. We could reject them based on a lack of development. Bradbury does not clearly explain the extent to which Bourne and Hinshaw's improper "trial strategy" consisted of offering inadmissible evidence as opposed to making improper argument, and in either case he is vague on the topics involved. As best we can discern, Bradbury intends to argue that the "trial strategy" involved alleged unfair prejudice to Bradbury resulting from arguments made by Bourne and Hinshaw about Bradbury's testimony that he was not negligent in representing Bourne. More specifically, Bourne and Hinshaw's allegedly impermissible arguments were that Bradbury had effectively conceded that he could not prove that Bourne was aware of facts giving rise to Bradbury's liability before December 17, 2003, because Bradbury testified that he believed that he had not been negligent in representing Bourne.
¶36 By way of additional background, the circuit court denied Bradbury's motion for mistrial primarily on the ground that it was entirely appropriate for Bourne and Hinshaw to present arguments based on reasonable inferences arising from evidence about what Bradbury knew and when he knew it. The court reasoned that this was because Bradbury's knowledge was relevant to the jury's determination of whether Bourne knew or should have known that he had a malpractice claim against Bradbury before December 17, 2003.
¶37 "Whether to grant a mistrial is ... a matter for the trial court's discretion, and we accord great deference to a trial court's decision on a motion for mistrial." Broadhead v. Farm Mut. Auto. Ins. Co. , 217 Wis. 2d 231, 239, 579 N.W.2d 761 (Ct. App. 1998). To grant a mistrial, a circuit court "must determine, in light of the whole proceeding, whether the claimed error was sufficiently prejudicial to warrant a new trial." Ellsworth v. Schelbrock , 229 Wis. 2d 542, 562, 600 N.W.2d 247 (Ct. App. 1999).
¶38 Bradbury may intend to make three categories of arguments as to why improper arguments by Bourne and Hinshaw should have compelled the court to grant a mistrial: that Bourne and Hinshaw's arguments breached the terms of Bourne's stipulation to bifurcate trial, in light of the fact that Hinshaw effectively joined into the stipulation by moving for consolidation; that the arguments precluded Bradbury from receiving a fair trial on his affirmative defense by unfairly obscuring his arguments regarding the statute of limitations; and that the arguments "worked an unfair surprise" on Bradbury. We need not analyze these arguments individually, because they suffer from a common flaw: It was reasonable, and foreseeable to Bradbury, that Bourne and Hinshaw would of negligence. For this reason, Bradbury's "trial strategy" arguments have no starting point.
¶39 Explaining further, Hinshaw and Bourne's arguments referencing Bradbury's denial of negligence were reasonably and foreseeably related to the resolution of the discovery rule issue at the heart of the statute of limitations trial, the rule we discussed in Bourne . There were competing inferences regarding what Bourne knew or should have known about whether his claim against Bradbury had accrued by December 17, 2003. Further, while there was evidence supporting a conclusion that Bourne knew or should have known that he had been harmed in the buyout by that date, whether Bourne had an objective basis to have discovered that Bradbury caused that harm by that date was a question of fact for the jury.
¶40 In light of the record before it, the court reasonably determined that Bourne and Hinshaw's decision to make arguments referencing Bradbury's subjective beliefs was foreseeably relevant to resolving that question of fact. Proof of Bradbury's subjective beliefs had a tendency to support or undermine Bourne's objective basis for knowing the claim had accrued as of December 17, 2003. See WIS. STAT. § 904.01 (Definition of "relevant evidence"). Bradbury does not suggest that the court limited his opportunity to present contrary evidence or argument. The jury was free to give the relevant evidence the weight that the jury thought it deserved, in light of the arguments made by both sides. The jury was asked to render a verdict only on the discovery rule issue, not on anyone's liability, and Bradbury was not prevented from stressing to the jury the limited scope of the issues it was to decide. See Geise v. American Transmission Co. LLC , 2014 WI App 72, ¶ 26, 355 Wis. 2d 454, 853 N.W.2d 564 ("[I]t is presumed that jurors follow the jury instructions given by the [circuit] court.").
¶41 Bradbury's stipulation-breach argument requires no further discussion. What we have already explained demonstrates that it could not have been a violation of the stipulation to hold a statute of limitations trial or to allow argument at that trial based on Bradbury's denial of negligence.
¶42 In sum, the record supports the determinations that Bourne and Hinshaw's trial strategy did not breach the stipulation to bifurcate, and did not prevent Bradbury from presenting his case at the statute of limitations trial or cause unfair surprise to Bradbury. Therefore, the court reasonably denied the mistrial motion. Accordingly, we decline Bradbury's request that we use our discretionary power to overturn the circuit court's decision under WIS. STAT. § 752.35.
IV. The Circuit Court Did Not Erroneously Exercise Its Discretion In Denying Bradbury's Motions For Mistrial Or Continuance Based On Bourne's Discovery Responses
¶43 Bradbury argues that the circuit court erred in denying another mistrial motion, or in the alternative a motion for a continuance, based on the court's allowing Bourne to use exhibits at trial that he had failed to identify in response to Bradbury's pretrial discovery request. In denying both motions, the court emphasized that Bourne and Hinshaw had made the pertinent documents available to Bradbury as part of the pretrial litigation process. On appeal, Bradbury argues that: (1) the court committed an error of law by relying on the earlier availability of the documents; (2) Hinshaw and Bourne's use of certain exhibits at trial was unfairly prejudicial to him; and (3) Hinshaw and Bourne's failure to identify the documents as exhibits before trial violated a general rule against "trial by ambush." We summarize the pertinent legal standards, provide additional background, and then explain why we reject each of Bradbury's arguments.
¶44 As we have noted, a circuit court's decision whether to grant a mistrial is discretionary. Similarly, whether to grant a continuance is in a circuit court's "liberal" discretion. Page v. American Family Mut. Ins. Co. , 42 Wis. 2d 671, 677-78, 168 N.W.2d 65 (1969).
¶45 By way of additional background, the parties exchanged various documents during the course of pretrial litigation, including in response to discovery requests. After answering a request by Bourne and Hinshaw to identify potential trial exhibits, Bradbury requested that Bourne and Hinshaw similarly identify their potential trial exhibits. Bourne and Hinshaw objected to the request, and asserted that they had not determined which potential exhibits they planned to use at trial. Bourne and Hinshaw never supplemented these responses, and Bradbury does not indicate that he brought the matter to the court's attention before trial. Bourne offered several exhibits at trial, which were admitted. Hinshaw did not seek to introduce exhibits.
¶46 During opening arguments, after it became clear that Bourne intended to offer exhibits that Bourne had not identified as potential trial exhibits before trial, Bradbury objected, and subsequently moved for a mistrial or, in the alternative, a continuance. Bradbury contended that Bourne was conducting trial by ambush through the use of exhibits not identified in advance of trial. However, Bradbury does not contest that the documents that Bourne offered as exhibits at trial had been available to him before trial.
¶47 The court determined that neither mistrial nor a continuance would be appropriate. The court pointed to the fact that the documents at issue had been produced to or were otherwise made available to Bradbury through pretrial litigation. After trial, Bradbury renewed his objection. The court repeated its earlier position and further explained that, although Bradbury may not have foreseen precisely how Bourne's documentary evidence would be used, he should have understood the significance of the evidence. On this basis, the court determined that Bourne's use of the exhibits at trial did not unfairly prejudice Bradbury. Further, the court found that Bourne had in fact not yet determined which documents he might offer at trial when he took that position in advance of trial.
¶48 We conclude that it was not an error of law for the circuit court to consider Bourne's earlier production of exhibits in deciding whether unfair prejudice resulted from their use at trial. Bradbury relies heavily on Berna-Mork v. Jones , 173 Wis. 2d 733, 496 N.W.2d 637 (Ct. App. 1992). However, that case involved an allegation contained in an affidavit submitted in support of summary judgment when the court never ruled on the ground in question during the summary judgment phase or received evidence at trial concerning that ground. Id. at 736, 740-41. Here, in contrast, Hinshaw and Bourne relied on documents that were moved into evidence and considered by the jury. We do not discern Bradbury to be making a legal argument that remains after distinguishing Berna-Mork .
¶49 Bradbury's unfair prejudice argument lacks substance. Bradbury states that earlier notice of Bourne and Hinshaw's potential exhibits would have alerted him to their alleged plan to "breach" the stipulation for a bifurcated trial by making arguments based on his denials of negligence. This argument goes nowhere for reasons we have already explained.
¶50 Bradbury argues that the circuit court here permitted "trial by ambush," contrary to fundamental discovery principles. See Carlson Heating, Inc. v. Onchuck , 104 Wis. 2d 175, 180, 311 N.W.2d 673 (Ct. App. 1981) ("Wisconsin has abandoned the concept of 'trial by ambush' where neither side of the lawsuit knows until the actual day of trial what the other side will reveal in the way of witnesses or facts"; circuit court did not erroneously exercise its discretion in dismissing case as sanction for failure to timely file court-ordered disclosure of trial witnesses). Even if we were to assume without deciding that Bourne violated Wisconsin's discovery rules, we would conclude that the circuit court here properly exercised its discretion in determining what remedy, if any, was appropriate. See WIS. STAT. § 804.12(4) ; Braverman v. Columbia Hosp. Inc. , 2001 WI App 106, ¶ 11, 244 Wis. 2d 98, 629 N.W.2d 66 ("Generally, discovery disputes are addressed to the trial court's discretion.").
¶51 The court determined that a mistrial would be a disproportionate response to the failure to produce a list of documents already available to Bradbury, the significance of which was already known to Bradbury, and that a continuance would cause an unnecessary delay for a trial that had already been long delayed. We conclude that these reasons for denying Bradbury's motions were well supported and reasonable. Accordingly we affirm these decisions of the court as appropriate exercises of its discretion.
V. The Circuit Court Did Not Erroneously Exercise Its Discretion In Setting The Order Of Proof And The Burden Of Proof Was Not Misallocated
¶52 Bradbury argues that the order of proof at trial set by the circuit court in some manner misallocated the burden of proof. It is fatal to this argument that Bradbury fails to clearly explain how the order of proof used by the court unfairly prejudiced him.
¶53 "The order of proof is largely in the discretion of trial court." Putnam v. Deinhamer , 270 Wis. 157, 164, 70 N.W.2d 652 (1955).
¶54 Before trial, the court heard from the parties on the appropriate order of proof and directed that Bradbury present his evidence first, followed by Bourne, followed by Hinshaw. The court reasoned that this order would be least likely to confuse the jury about a fact, not contested at trial or on appeal, that we have already referred to: Bradbury had the burden of proving the discovery-of-claim issue at trial.
¶55 The court's logic was sound. " '[T]he burden of proof with respect to a statute of limitations is on the party asserting it.' " See TJ Auto LLC v. Mr. Twist Holdings LLC , 2014 WI App 81, ¶ 14, 355 Wis. 2d 517, 851 N.W.2d 831 (quoted source omitted). We note that Bradbury stipulated to bifurcation knowing that he would have the burden of proof in a limited scope trial.
¶56 Bradbury's argument on this topic begins with the observation that, if the jury had resolved the statute of limitations issue differently than it did-finding that Hinshaw had missed the statute of limitations-then Bourne would have had a head start in the second trial, proving that Hinshaw 's negligence caused damages to Bourne. From this fact, Bradbury contends, he and Bourne both had burdens of proof at the statute of limitations trial (Bradbury as to Bourne, and Bourne as to Hinshaw). And, the argument proceeds, because Bradbury and Bourne both had burdens of proof, Bourne should have presented first as the initiator of both malpractice actions.
¶57 Bradbury purports to support whatever argument he intends to make regarding the order of proof with what he submits is the persuasive power of a federal district court opinion, but that opinion is entirely distinguishable. In L-3 Communications Corp. v. OSI Sys., Inc. , 418 F. Supp. 2d 380, 383 (S.D.N.Y. 2005), the trial court denied a contested motion to bifurcate trial where each of two parties had burdens of proof on their respective claims and counterclaims-one party had the burden on certain issues, and the other party had the burden on other issues. Id. at 382-83. This left the court to determine the appropriate order of proof at a single trial on all issues. Id. The court determined that, because the parties must "bear the burden of proof on distinct counts of their causes of action," then there are "good grounds" for the trial court to have the " 'actual plaintiff' " who filed the law suit proceed first. Id. at 383 (quoted source omitted). The problem for Bradbury is that, assuming without deciding that a plaintiff-goes-first concept is a sound choice for trial courts in certain scenarios, as we have explained, here Bourne and Bradbury stipulated to bifurcate, beginning with a trial on a single issue on which Bradbury unquestionably had the burden of proof.
¶58 Also regarding the order of proof, Bradbury repeats the same, difficult-to-track argument that the circuit court allowed Hinshaw and Bourne to in some manner "shift" to Bradbury the burden that Bourne had to prove Hinshaw 's malpractice. We could reject this argument on multiple grounds. However, it is sufficient to note that Bradbury fails to explain how the order of proof, in combination with or addition to consolidation, unfairly prejudiced him at the statute of limitations trial.
VI. The Circuit Court Did Not Erroneously Exercise Its Discretion In Admitting Sweeney's Out-Of-Court Statements
¶59 Bradbury contends that the circuit court erroneously exercised its discretion in admitting out-of-court statements of Bradbury's former business partner, Sweeney, and in denying Bradbury's mistrial motion based on the admission of Sweeney's statements. There are aspects of this argument that we do not understand, but we reject it based on our conclusion that the record before the court supported its determination that the testimony at issue was not hearsay because it was not offered for its truth.
¶60 We "will not disturb [its] decision to admit or exclude evidence unless the circuit court erroneously exercised its discretion." Weborg v. Jenny , 2012 WI 67, ¶ 41, 341 Wis. 2d 668, 816 N.W.2d 191. For a statement to be considered hearsay, and therefore generally inadmissible, it must be offered to prove the truth of the matter asserted. WIS. STAT. §§ 908.01(3), 908.02 ; see also State v. Britt , 203 Wis. 2d 25, 38, 553 N.W.2d 528 (Ct. App. 1996) ; Daniel D. Blinka, Wisconsin Practice: Wisconsin Evidence § 801.301 (4th ed. 2018) ("[E]vidence is hearsay only if the proponent wants to use the statement to prove the truth of a matter asserted.").
¶61 Hinshaw and Bourne presented arguments to the jury based on Bourne's testimony regarding statements Sweeney made during a meeting with Bourne and Bradbury. At this meeting, Sweeney allegedly told Bourne and Bradbury that, contrary to the other two company members' representations, Sweeney never intended to vote to remove Bourne from the company. Sweeney died before the statute of limitations trial took place, without being deposed. When Bradbury raised a hearsay objection to these out-of-court statements, the circuit court concluded that they were not hearsay because they were not offered for the truth of the matter asserted, but instead to shed light on what Bourne knew or should have known about Bradbury's pertinent conduct.
¶62 Bradbury asserts that Sweeney's statements were offered to prove that the two anti-Bourne members had in fact misled Bourne and Bradbury about Sweeney's intentions, and not to prove what Bourne knew or should have known about Bradbury's alleged negligence. We see no basis for this argument. The circuit court made its challenged decisions regarding this evidence on the reasonable grounds that (1) the jury would never be asked to make a finding about whether the two anti-Bourne members had in fact misled Bourne and Bradbury; and (2) this evidence would be relevant to the jury's determination of what Bourne knew or should have known about Bradbury's pertinent conduct prior to December 17, 2003.
CONCLUSION
¶63 For all of these reasons, we affirm the circuit court's rulings to: consolidate the two malpractice actions; use the special verdict from the pattern instruction; deny Bradbury's motions for a mistrial and to withdraw from the stipulation to bifurcate based on Bourne and Hinshaw's arguments at trial; deny Bradbury's motions for a mistrial and continuance based on Bourne and Hinshaw's failure to disclose exhibit lists in advance of trial; set the order of proof at trial; and admit Sweeney's out-of-court statements.
By the Court .-Judgment and order affirmed.
Not recommended for publication in the official reports.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

"Under the discovery rule, tort claims 'accrue on the date the injury is discovered or with reasonable diligence should be discovered, whichever occurs first.' " Gumz v. Northern States Power Co. , 2007 WI 135, ¶ 25, 305 Wis. 2d 263, 742 N.W.2d 271 (quoted source omitted).

Bradbury also asks that we reverse the subsequent judgment dismissing Bourne's case against Hinshaw. However, there is no basis to upset the judgment dismissing Hinshaw given our decision to affirm the order extinguishing the statute of limitations defense. Bradbury does not dispute that Bourne has no case against Hinshaw if Bradbury has no statute of limitations defense.

Bradbury argues that Rentmeester v. Wisconsin Lawyers Mutual Insurance Co. , 164 Wis. 2d 1, 473 N.W.2d 160 (Ct. App. 1991), supports his any-right-to-relief argument in some manner. However, this opinion is entirely off point, because it does not address the topics of permissive joinder or consolidation.

While we reject his arguments on the grounds stated in the text, we question whether Bradbury properly preserved for appeal some or all of his challenges to the circuit court's use of the pattern special verdict and accompanying instruction. To cite one problem, Bradbury's second argument, about use of the word "damage," appears to directly conflict with the special verdict that he himself proposed to the court. His proposed verdict would have asked the jury whether Bourne should have discovered that he "suffered actual damage" and whether he should have discovered that Bradbury was "responsible" for that "damage."

Using the same argument about "trial strategy," Bradbury also challenges the circuit court's denial of his request to withdraw from the stipulation he entered into with Bourne to bifurcate for purposes of holding a statute of limitations trial. However, the court's decision to deny the request to withdraw from the stipulation could matter only if we were to reverse the court's denial of Bradbury's mistrial motions, because Bradbury sought withdrawal from the stipulation for the sole purpose of paving the way for a new trial on all issues. For this reason and for ease of reference, we make no further reference to Bradbury's motion to withdraw from the stipulation, except to refer to the stipulation itself in connection with Bradbury's argument that the court allowed Bourne to "breach" the stipulation.